ELIZABETH DAVIS, *et al.*, Appellants, v. JACOB MILLER, *et al.*, Appellees, EDWARD M. MORRIS, Appellant.

**Cancellation of Deed:** EVIDENCE: *Undue influence.* In an action for cancellation of a deed from a mother to her son, made eleven days before her death, on the ground of undue influence, defendant claimed it was given in pursuance of an agreement to do so if he made a home for her, took care of her, and paid certain sums of money to each of the plaintiffs and one of the defendants. While there was evidence for plaintiff that defendant, by threats of taking his own life (which he denied), and harsh treatment, induced her to make the deed, it was their own testimony, and only sufficient to place on defendant the burden of proving that the deed was valid. Disinterested witnesses testified for defendant that his mother offered to give him the farm if he would live with and take care of her. The evidence showed that to accept her offer he got a release from a contract of hiring, made a home for her, and treated her well, and supplied her needs; that she kept house when able, and that, when unable he hired help; that they used dairy products and poultry to support the family, and that he took the farm products; that he paid two of the plaintiffs the amount specified, and offered to pay the others. *Held*, that the deed was valid.

*Appeal from Greene District Court.*—HON. Z. A. CHURCH, Judge.

SATURDAY, MAY 23, 1896.

ACTION in equity to have canceled a conveyance of real estate, for the partition of the real estate, and for other relief. There was a hearing on the merits, and a decree in favor of the defendant, Jacob Miller. The plaintiffs and the defendant, Edward Morris, appeal. —*Affirmed.*

*Shortley & Harpel* and *Rose & Henderson* for appellants.

*Russell & Tolliver* for appellees.

ROBINSON, J.—Rebecca Ganoe, a widow, died, intestate, in April, 1894, and left, as her only heirs, one son, four daughters, and two grandsons, who are the sons of a daughter who died before her mother. Two daughters, Elizabeth Davis and Lottie Keenan, and their husbands, and one grandson, Frederick O. Morris, are parties plaintiff; and the son, Jacob Miller, the daughters Olive Collins and Rebecca Morris, and their husbands, and the grandson Edward Morris, are parties defendant. Mrs. Ganoe, during her lifetime, owned one hundred and twenty acres of land, which she conveyed to her son, Jacob Miller, eleven days before her death. The consideration for the conveyance stated in the deed was six hundred dollars. She had been married three times, and her last husband, John Ganoe, died in the year 1887. A short time after his death, she and Jacob commenced living together, and built a house on the land in question, and made it their home until she died. The plaintiffs claim that, when the deed was executed, Mrs. Ganoe was very weak mentally and physically, in consequence of age and sickness; that she could not understand the nature and effect of the deed; that she was wholly under the influence and control of her son; that he had threatened in her presence to take his own life if she did not convey the land to him; that she signed the deed at his solicitation, and because of his undue influence over her; that the consideration recited in the deed was not paid, and that he did not intend to pay it; and that it was grossly inadequate as a consideration for the land. The defendant, Miller, denies that his mother was not competent to execute the deed at the time it was given; that he exercised any influence over her to obtain it; and that the deed is invalid. He claims that it was executed pursuant to a verbal agreement between himself and his

mother, made after the death of Ganoe, by virtue of which he agreed to live with and provide for, and take care of her while she should live, and pay to each of his sisters, Elizabeth and Olive, one hundred and thirty dollars, and a like sum to the two grandsons, after the death of his mother; that he has performed the agreement on his part, excepting to pay to the grandsons the sums to which they are entitled; and that he is ready to make payment of those sums at any time. The defendants, Rebecca and Albert Morris, and Olive Collins, disclaim any interest in this action. Frederick O. Morris, a minor, appears by his next friend, and Edward Morris, also a minor, appears by a guardian *ad litem*, who has filed a general denial. The district court found that the deed of the mother to the son was valid, and decreed the title to the premises in dispute to be quieted in him.

The evidence for the plaintiffs tends to support their claims in some respects. The two sisters, Rebecca and Lottie, testify in their own behalf, and, if their testimony is to be taken as true, Jacob was guilty of cruelty to his mother, and neglected her, and was indifferent to her welfare in many ways while they were living together. They are corroborated to some extent by other witnesses, but they testify most strongly against their brother. Some of their testimony, especially a part of that given by Mrs. Davis, is clearly incompetent, and appears to be strongly colored by self-interest. Mrs. Keenan says that on one occasion she found a bottle of laudanum in her mother's room, and was told by her that she had hidden it because Jacob had threatened to take it if she did not convey the farm to him. Another witness tells of finding Jacob locked up in a room with a butcher's knife, and there is testimony to the effect that the mother was alarmed by these incidents. It is shown that she kept house for her son, and milked the cows; and there is

testimony to the effect that he refused to milk the cows, and would not haul water for her, and that he cursed her; that he would not furnish her help in the house when she was unable to do the work alone, and that he annoyed her by swearing about his sister's small children when they visited her; that she stood in fear of him, and that she was unwell for some time before her death; also, that she had said she should not dispose of her property to any of her children. It is shown that the products of the cows and poultry were used in the support of the family, and that Jacob had what was grown on the farm.

It may be conceded, that the evidence on the part of the plaintiffs was sufficient to place upon Miller the burden of proving that the deed was valid. This, we think, he has done. He has shown, by disinterested witnesses, that his mother offered to give him the farm if he would live with, and take care of her. At that time he was under contract to work for another, but he obtained a release from the contract, and at once proceeded to make a home for his mother. He treated her well, and furnished what she needed, although she worked when she was able to do so. When she was unable to work, he employed girls to help her. He sometimes used profane language, but his sisters did the same, and it does not appear that the mother was annoyed by it. He gave to Mrs. Davis, property to the value of one hundred and thirty dollars, and as much more to Mrs. Collins. There is some dispute as to the reason which caused him to do so, but the preponderance of the evidence sustains his claims with regard to it. It appears that the mother and her husband, Ganoe, supposed that the children by her first marriage were entitled to a share of the land, although her first husband never had any interest in it; and accordingly, Ganoe had paid to Lottie and Rebecca one hundred and thirty dollars each, for their

claim to the land; and, in order that all the heirs might be treated alike, property was given to Elizabeth and Olive, as stated. The mother was seventy years of age at the time of her death, and her mind was sound. Although uneducated, her judgment was good, and she was careful in business matters. The testimony for the plaintiffs does not show that she was not mentally competent to execute the deed, and the testimony for Miller shows clearly that she was competent. On the day the deed was executed, the mother and her son went to Rippey, and she acknowledged it before a notary public, who testifies that her "mental condition was all right." Others saw her about the same time, and testify to the same effect. Several disinterested witnesses, including Mrs. Collins and Mr. Morris, testify to declarations made by the mother, which were, in substance, that she intended that her son should have the land, and on one or more occasions she had inquired of friends what she had better do to secure it to him. He denies the alleged threats to take his own life, and, if they were ever made, they did not have any effect upon the mother in executing the deed. We are of the opinion that it was made to perform her agreement with her son, and pursuant to a fully-considered and settled purpose. It was not necessary that the consideration given for the deed be a valuable one. The land belonged to the mother, and she had the right to convey it to her son without consideration. The decree of the district court appears to be right, and it is AFFIRMED.